Thomas Dwight **JENKINS**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 45177.

Court of Criminal Appeals of Texas.

July 26, 1972.

Rehearing Denied Oct. 18, 1972.

Wm. P. Buckner, III, Strawn, for appellant.

Emory C. Walton, Dist. Atty., Eastland, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The conviction which forms the basis for this appeal was for robbery by assault. The punishment was assessed by the jury at 50 years.

At the outset, appellant challenges the sufficiency of the evidence to sustain the conviction. He particularly complains that the evidence is insufficient to corroborate the testimony of accomplice witnesses Williams and Tomlinson.

The record reflects that on the morning of September 24, 1970, two men entered the First State Bank of Rising Star in Eastland County, and robbed James Rutherford, President of the bank, of approximately $9,000.00. Rutherford, employees and customers were forced, at gunpoint, into a back room while the money was being gathered. Both men were dressed in dark suits and white shirts, wore sunglasses, gloves and narrow-brimmed hats, and appeared to be wearing wigs. They left the bank, got in a car and departed.

Johnny Williams, called by the State, testified that he, the appellant, Dwayne Sormrude and James Richard Sikes planned the robbery of the bank in question. He revealed the plan called for Sormrude and the appellant to commit the robbery while Sikes waited outside in the getaway car. It was his (Williams') job to cut a fence and prepare a hiding place for the getaway car and wait at this place to carry his three confederates to safety in another car. Williams testified that the appellant and Sormrude were dressed in dark clothes, etc., when they left for the bank. He revealed that when they returned they had approximately $9,000.00 in money, and told him details of the robbery. He related that all he received out of the robbery was approximately $250.00.

Rutherford and two employees of the bank, Pat Maynard and Mildred Hounsel, made in-court identifications of the appellant as one of the robbers. They further testified they identified the appellant from photographs shown them by a Texas Ranger. Their identifications were somewhat less than positive. Rutherford said, "I believe he is, yes." Maynard testified, "Yes sir. I think it is," and Hounsel testified, "I think it could be."

The appellant called Mary Tomlinson, who testified she had lived with Sikes and that she had helped the appellant and others prepare for the robbery which she had heard them planning by spraying their hair with a hair color and applying make-up as a part of their disguise and that she helped them to count the money when they got back.

Testifying in his own behalf, appellant, who had been previously convicted of armed robbery and "three charges of auto theft" in Florida, denied the bank robbery and claimed he was at the Arrowhead State Park at the time of the alleged offense. He acknowledged that at the park on the day in question he was in the company of Sormrude, Williams, Mary Tomlinson and others. He admitted he had played in Sikes' band at the Travellers Club where the witness Maynard thought she had seen the appellant prior to the robbery.

The court charged the jury that Johnny Williams and Mary Tomlinson were accomplice witnesses, as a matter of law, and their testimony had to be corroborated. See Article 38.14, Vernon's Ann.C.C.P. The defense of alibi was also submitted.

■ In instructing the jury that Mary Tomlinson was an accomplice witness, the court gave a far more favorable charge than that to which the appellant was entitled. Article 38.14, supra, is not construed to require corroboration of a witness called by the accused. Brown v. State, 476 S.W.2d 699 (Tex.Cr.App.1972); Davis v. State, 162 Tex.Cr.R. 280, 284 S.W.2d 713 (1955). 24 Tex.Jur.2d Evidence § 687, p. 304.

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. . . ." Edwards v. State, 427 S.W.2d 629, at 632 (Tex.Cr.App. 1968).

Eliminating the testimony of the accomplice witness Williams, we have the independent testimony of the witnesses Rutherford, Maynard and Hounsel that appellant was one of the robbers. It is true that their identification was less than positive. However, as pointed out in Williams v. State, 466 S.W.2d 313 (Tex.Cr.App. 1971), the

" . . . fact that a witness cannot be positive in his identification goes to the weight of the testimony and not to its admissibility. Terry v. State, 132 Tex. Cr.R. 283, 103 S.W.2d 766; Graves v. State, 118 Tex.Cr.R. 591, 40 S.W.2d 100; Pruitt v. State, 114 Tex.Cr.R. 281, 25 S. W.2d 870.

" . . . The court or the jury may rely upon all of the evidence in the case to determine the sufficiency thereof; that offered by the appellant as well as that offered by the state." (Citations omitted.) 466 S.W.2d at 314.

■ Applying the test described in Edwards v. State, supra, we conclude the evidence was sufficient to corroborate the accomplice witness Williams. Further, since Tomlinson was not an accomplice witness, her testimony, incriminating the appellant and offered by him, could also be considered in the assessment of the sufficiency of the corroboration.

Next, appellant contends the court erred in failing to grant his mistrial motion when the State inquired of the appellant if he had threatened to take the life of Sormrude if Sormrude became a witness for the State.

On cross examination of the appellant, inquiry was made about his relationship with Sormrude. Appellant admitted knowing Sormrude, but denied participating in the instant offense with him. The record then reflects the following:

"Q. Let me ask you this. Why did you state yesterday when someone told you that Mr. Sormrude would possibly be here to testify that you would kill him if he did?

"A. I didn't testify anything of the kind.

"Q. I mean; what did you tell a man at the jail that for?

"MR. BUCKNER: Your Honor, there is no testimony that . . .

"THE COURT: Ask him if he did.

"MR. BUCKNER: He said 'why did you', he didn't ask him.

"Q. (by Mr. Walton) Did you make that statement?

"A. No."

A mistrial motion was immediately made ". . . on the basis of *that* question." (Emphasis added.)

It was overruled but the court on its own motion instructed the jury not to consider the "question and answer for any purpose."

■ When an accused takes the stand as a witness, he is subject to the same rules as any other witness. Brumfield v. State, 445 S.W.2d 732, 735 (Tex.Cr.App. 1969). See, also, Santiago v. State, 444 S.W.2d 758 (Tex.Cr.App.1969).

". . . He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant, except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case, his failure to testify on a former trial or hearing, and the like. . . ." 1 Branch's Ann.P.C., 2d ed., § 168, p. 170.

Thus, when an accused voluntarily takes the witness stand, he subjects himself to any legitimate cross examination within the rules of evidence.

■ Certainly it would appear proper for the State to elicit from the appellant whether or not he had made threats against a possible State's witness and to lay the predicate for his impeachment if he denies it. There is nothing to show that the State acted in bad faith.

■ The mistrial motion was apparently directed to the last question asked, "Did you make that statement?", to which appellant responded in the negative. In light of the circumstances presented and the court's jury instruction, we perceive no error in the court's action in refusing to grant a mistrial.

■ Lastly, appellant complains of the court's action in instructing the State how to cure an objectionable question. Reference is to the court's statement: "Ask him if he did", in the foregoing excerpt from the record. He contends the same was a comment on the weight of evidence. We cannot agree. It would appear that the statement merely told the prosecutor to rephrase his question although it did contain an element of instruction therein.

■ Further, if the statement could be construed as a comment, no reversible error is presented in absence of an objection thereto. Ferrell v. State, 429 S.W.2d 901 (Tex.Cr.App.1968); Howard v. State, 420 S.W.2d 706 (Tex.Cr.App.1967); Franklin v. State, 409 S.W.2d 422 (Tex.Cr.App. 1966).

■ Sill further, in order for the court's remarks, assertedly on the weight of the evidence, to constitute reversible error, there must be found in such remarks a benefit to the State or injury to the accused. See Garcia v. State, 427 S.W.2d 897 (Tex.Cr.App.1968).

The judgment is affirmed.

ROBERTS, J., not participating.